Westbrook *v.* Hays.

1. When an execution has been quashed at the instance of a claimant as defective because not conforming to the judgment, the clerk may issue another execution which does conform to the judgment; and whether it be called an original or an *alias* makes no difference. That the judgment in this case was not dormant, is ruled in *Smith* v. *Rust,* 79 *Ga.* 519.

2. Where two members of a partnership separately conveyed parcels of realty to a third, and simultaneously assigned to him certain assets of the partnership by an agreement under seal executed by all three, in which agreement the third partner agreed to pay off certain described indebtedness of the partnership, to account for any surplus and to reconvey such realty if not necessary to sell the same to realize means to pay off such indebtedness, the third partner being a *quasi* trustee for his copartners and accountable to them, is not such a *bona fide* purchaser for value of the realty as will be protected under section 3583 of the code from the lien of a judgment then existing against one of his copartners, although he had no actual notice of the judgment, and although after receiving the conveyance he may have paid off with his own means debts of the partnership largely in excess of the entire value of all the property real and personal so conveyed and assigned to him,

and may, with the acquiescence of his copartners, have held the realty, claiming it as his own, more than four years before any of it was levied upon by virtue of said judgment, there being no evidence that any accounting or settlement took place by which the realty was cleared of the trust which characterized and qualified the conveyance under which the third partner took title and held the possession.                    *Judgment affirmed.*

March 23, 1892.  Argued at the last term.

Execution. *Bona fide* purchaser. Partnership. Before Judge BOWER. Dougherty superior court. April term, 1891.

Claim was interposed by Westbrook to the levy on land of an *alias* execution. The court directed a verdict finding the property subject, and afterwards denied a new trial, and the claimant excepted. In addition to the general grounds for new trial, and a general allegation of error in the direction of the verdict by the court, it is insisted that the court erred in admitting in evidence the *alias* execution with the entries on it, over the claimant's objection. It appears that on July 30, 1866, execution issued from the superior court against John R. Sims and Youel G. Rust for a principal sum with interest, and for interest on the principal sum from December 11th, 1863, and also for two other sums for stamps and costs. It bears an entry of levy dated March 3, 1870, and another entry of levy dated March 1, 1877, on the land involved in the present case; also an entry dated April 3, 1877, of "claim interposed by B. G. Lockett and S. F. Jennings," etc. On April 4, 1884, the clerk made this entry : "By the request of Wm. E. Smith, pl'ffs' attorney, I have amended this *fi. fa.* to make it conform to the judgment, by striking out the words, 'ten 20-100 dollars for costs & 50c. for stamps,' and have issued an *alias fi. fa.* in lieu of this with all the entries on this *fi. fa.* endorsed thereon, and have retained this in office under sec. 3496 of the code." The *alias* execution is a copy of the original with the entries

above stated (except that made by the clerk), and with the following additional entries : Just after the statement as to the interposition of claim by Lockett and Jennings are the words, "Claim withdrawn and *fi. fa.* ordered to proceed. W. E. S. October 4th, 1875." Also : "The foregoing is an *alias fi. fa.* issued on the judgment in said case to correct the orignal *fi. fa.* which was quashed at the October term, 1883, Dougherty superior court, because it did not conform to the judgment, and to make it conform to the judgment in all respects under section 3496 of the code, issued, dated and signed by me this April 4th, 1884." This entry is signed by the clerk. Also, the entry of levy dated April 4, 1884, to which the present claim was interposed. The grounds of objection by the claimant were, that the judgment from which the execution issued appeared to be dormant, and that the execution which was proceeding is neither an *alias* nor amended execution; there being no order for *alias*, application therefor, or affidavit as required by the code, §3980 ; nor was the original execution which the clerk amended levied and proceeding. "Claimant insists that the amended *fi. fa.* could only proceed under the facts in this case, and that the *fi. fa.* called an *alias* in this case is not an *alias* and could not proceed, as the clerk could not give life to both ; and that, as the original *fi. fa.* was amended first and before the so-called *alias* issued, it should have been levied and proceeded, and not the so-called *alias fi. fa.*"

The other grounds for new trial make the question whether the claimant and those under whom he claims were such *bona fide* purchasers for value and in possession without notice of the judgment for four years before a legal levy, as to free the land from the lien of the judgment. There was testimony that on March 30, 1870, Y. G. Rust was in possession of the property levied on, Sims, the other member of the firm of Sims & Rust,

then being dead. The claimant introduced a deed to the property in dispute from Y. G. Rust to Jordan and Lockett, dated April 19, 1870 ; a deed from Jordan to Lockett for his interest in the property, dated April 23, 1873 ; and a deed from Lockett's executor to the present claimant, dated September 6, 1887, to the property in dispute. Also, witnesses Y. G. Rust and R. S. Rust, from whose testimony appeared the following : B. C. Lockett went into possession of the property on the day the deed was made to him and Jordan, and remained in possession in his own right under the deed until his death in July, 1884, and then his executor continued in possession until his sale to the claimant. The warehouse situated on the land was worth for rent an average of $500 per annum ; the taxes, insurance and repairs would average about $100 per annum. Lockett went into possession *bona fide*, without any fraudulent purpose or intent, but for the purpose of protecting himself. This transaction was honest, and not for the purpose of avoiding the debts of any one, nor for the purpose of injuring, hindering or delaying any one. Y. G. Rust did not tell Lockett of this judgment. The property conveyed to Lockett and Jordan was not sufficient in value, at the time of the transfer, to pay off the indebtedness of Rust, Johnston & Co. which was assumed by Lockett, and never sold for enough to pay it off. Lockett paid all the debts assumed before he died. Rust, Johnston & Co. were never sued on any of their debts that Lockett assumed. Lockett was then amply solvent. Plaintiff's attorney admitted that it was an honest and *bona fide* transaction. B. G. Lockett had been a member of the firm of Rust, Johnston & Co., but that firm had been dissolved and notice of the dissolution published anterior to this transaction. The value of the real estate transferred to Lockett was, in the opinion of R. S. Rust, about $11,000. The indebtedness of Rust, Johnston & Co. amounted to about $150,000 or $200,-

000. The deed to Lockett was given as a consideration
for his settling up the business of said firm and assum-
ing to pay its debts. The books of the firm have been
lost, and cannot be found after diligent and repeated
search. The amount received by Lockett from the firm
assets (amount not known) was not sufficient to pay the
indebtedness of the firm and the amount they were in-
debted to him. He did not receive money other than
from the real estate, to pay the debts due by the firm,
by a considerable amount. It was actually necessary to
use this real estate for the payment of the debts that he
assumed to pay. All the money realized from the
assets and from the real estate was not sufficient to dis-
charge the debts of the firm, by some fifteen to twenty
thousand dollars. · The business was conducted by him.
He made all the settlements. He received all the money
and paid all claims against said firm. He paid full con-
sideration for this property in the discharge of the firm's
debts. R. S. Rust did not know what was the actual
cash value that Lockett received from the property,
except as shown by the 'deeds; but knows that it was
very much less than the consideration ($20,000) named
in the deed to Lockett. Nothing has been collected
from the assets of Rust, Johnston & Co. since 1882.

The plaintiff introduced a written agreement dated
April 19, 1870, and recorded June 27, 1870, between
B. G. Lockett for himself and L. A. Jordan of the
first part, and Youel G. Rust and Thomas H. Johnston
of the second part, in brief, as follows: "The part-
nership heretofore existing between Rust, Johnston &
Lockett under the name of Rust, Johnston & Co.,
Rust, Johnston & Lockett & T. H. Johnston, have
been dissolved," and said firm are indebted to Lathrop
& Co. $50,570.77 for the payment of which it is neces-
sary to provide immediately; and the parties of the
second part have this day conveyed to the parties of the
first part a number of lots of land and the undivided

half-interests of Johnston and of Rust in several other lots (giving the numbers), all in the city of Albany, and have also transferred and assigned to the parties of the first part the debts due by several named persons to said firm, consisting of open accounts, notes and drafts, amounting in the aggregate to $50,669.46, "as will more fully appear by reference to a schedule hereto attached and marked A." In consideration of the premises it is agreed, (1) that the parties of the second part shall, as soon as practicable, reduce all of the open accounts mentioned in the schedule to acceptances, either of Rust, Johnston & Co. or other good factors, and turn over the same to "said securities of the first part"; (2) the parties of the first part shall at once assume, pay off and discharge the debt due Lathrop & Co., "to be allowed thereupon interest at the rate of eighteen per centum per annum, and that they shall have the right to reimburse themselves by discounting the drafts to be turned over to them by said parties of the second part as above set forth"; (3) in the event that there is a surplus after reimbursing the parties of the first part on account of their payment of the Lathrop & Co. debt, said surplus is to be accounted for; (4) if the assets are sufficient to pay off all indebtedness of said firm respectively to third parties, also what may be due each partner on final settlement, then said conveyances of real estate are to be considered null and void, and the parties of the first part are to cancel the same and reconvey to parties respectively of the second part, as they may prefer; (5) if the parties of the first part shall be forced to sell the real estate conveyed to them as above set forth, the balance, if any, shall be accounted for to parties of the second part respectively.

W. T. JONES and HALL & HAMMOND, for plaintiff in error.

WOOTEN & WOOTEN, *contra.*